Livingston, J.,
 

 delivered the opinion of the court. — The ship Aurora and cargo, owned by the claimants, who are American citizens, and documented as American property, were captured, on the 26th of November 1812, by the private armed ship Governor Tompkins, on an ostensible destination for St. Bartholomews. From the documents on board and the preparatory examinations, it appears, that the ship sailed from Newburyport to Norfolk, in ballast, took in her present cargo, consisting of bread, flour, corn, &c., at the latter place, and sailed from thence on the voyage on which she was captured, on or about the 12th of November 1812. The cargo was consigned to the supercargo of the ship ; and the destination thereof, upon the ship’s papers, supported by the preparatory examinations, was St. Bartholomews, for which island the ship obtained her clearance. At the time of capture, she was to the leeward of that island; and certain passports or protections from the agents of the British government were found on board, which are familiarly known by the title of British licenses ; which documents are as follows
 
 :
 

 (a)
 

 Two questions have been made at the bar. 1. Whether the acceptance and use of an enemy’s license or passport of protection, on a voyage performed in furtherance of the enemy’s avowed objects, be illegal, so as to affect the property with confiscation ? 2. If so, whether there is anything in the present case, to exempt it from the general principle ? The first point having just been decided in the affirmative, in
 
 The Julia (ante,
 
 p. 181), it only remains to inquire, whether there be anything in this case to exempt it from the general principle.
 

 In the opinion of a majority of the court, it is not easy to discriminate *2201 between these cases : both of the vessels *had licenses or passports J of the same character, and substantially for the same purpose, except only that the object of the Julia was to supply the allied armies in Portugal, and the original intention of the Aurora was to go to the British West Indies. It is by no means clear, that this destination was ever changed ; but admitting that, from an apprehension of seizure, in case of her returning to the United States, after touching at a British port, she, in fact, sailed on a voyage to St. Bartholomews, this can make no substantial difference in her favor. Her object in going there was equally criminal, and subserved the views of the enemy, nearly, if not quite as well, as if her cargo had been landed in a British island ; of the real design of the voyage there can remain no doubt; for it abundantly appears, from the license itself, that the professed object of Admiral Sawyer, at least, in granting it, was to obtain a supply of provisions for the enemy ; and the court will not easily lend its ear to a suggestion, that notwithstanding the Aurora was found with a British protection on board, of so obnoxious a character, yet her owners
 
 *140
 
 intended to deceive the enemy, either by going to a port not mentioned in it, or by disposing of her cargo in a way that would not have promoted his views. Without meaning to say, that such conduct may, under no circumstances whatever, be explained, the court thinks that there is no proof, in this case, to show that it was not the intention of the claimants to carry into effect the original understanding between them and Mr. Allen. For although the destination to St. Bartholomews be conceded, it is evident, that Mr. Allen, who acted as British counsel, supposed the views of Admiral Sawyer might be answered, as well in that, as in any other way ; nor is it clear, as was said at bar, that the documents which were received from Mr. Allen, which varied more in form than in susbstanee from the admiral’s passport, would not have protected her against British capture, on a voyage to that island. The protection of Admiral Sawyer extended to unarmed American vessels laden with dry provisions, and
 
 bond fide
 
 bound to British, Portuguese or Spanish ports. The only modification or extension introduced by Mr. Allen, was the permission to go to a Swedish island, equally neutral with Spain and Portugal, in the vicinity of the British possessions. Whether all or any of these papers would have saved the Aurora from confiscation, in a British court of admiralty, this court is not bound *to assert; it r*2oi is sufficient, if that were the reasonable expectation of the parties,' L as it certainly was, and it is more than probable that such expectation would have been realized, considering the very important advantage which the enemy was to derive from them. In case of capture, there can be no doubt, that the claimants would have interposed these very papers, which are now supposed to have emanated from unauthorized agents, and probably, with success, as a shield against forfeiture. Why then, should they be permitted to allege here, that they would have been ineffectual ior that purpose ?
 

 It is also insisted, that in this case, no illicit intercourse had actually taken place ; that the whole offence, if any, consisted in intention ; and that if a capture had not intervened, there was still a
 
 locus poenitentice,
 
 and no one can say, that even a project of going to St. Bartholomews, might not have been abandoned. In this reasoning the court does not concur ; but is of opinion, that the moment the Aurora started on the voyage for St. Bartholomews, with the license in question, and a cargo of provisions, she rendered herself liable to capture by the public and private armed ships of the United States, who were not bound to lie by, and see how she would conduct herself during the voyage, the consequence of which would be, that no right of capture would exist, until all chance of making it were at an end.
 

 Judgment affirmed.
 

 (a)
 

 See the statement at the beginning of the report of this case.. 132