Putnam, J.
It has been contended, on the part of the defendants, that this is a double insurance ; the contract on the part of the owners of the ship being, in effect, a prior insurance.
But we are all of opinion that this reasoning is not well founded, even if this contract should be considered, in effect, as an insurance against the risks to be borne by the owners of the ship.
A double insurance is, where one insures the same thing twice over against the same perils. But here the perils undertaken by the owners of the ship are not the same which the defendants assumed. The owners engaged, in effect, that the license should not be destroyed or injured by them or any under them. The defendants' took other risks.† Thus, where one procures an insurance from one underwriter against the danger of the seas ; from another against the danger of the enemy ; from a third against the barratry of the master, &c. ; although these several insurances are upon the same ship, they are not double ; because the assured can never receive more than one satisfaction. So where persons, having different interests in the same thing, insure each his separate concern, as in the case of Godin & al. vs. The London Insurance Company; (1) in which cases the assured can never recover more than one indemnity. *193 But it is otherwise in a double insurance ; for there the assured receives payment twice for the same thing.
It has been further insisted for the defendants, that there has not been a loss within thp policy ; that the plaintiff permitted the owners of the ship to use this license as one of the muniments of the ship ; that it could not be afterwards used for any other vessel without fraud ; and, therefore, that the indorsement of it made no difference ; for that it was as complete a protection for that ship after it was indorsed as before ; and further, that the injury was from a lawful act of * the belligerent, and in consequence of the [*219] blockade, a risk not taken by the defendants.
The case leaves no doubt as to the intention of the parties. It is not intimated that the plaintiff did not fully disclose to the defendants the voyage which he contemplated, and every material fact relating to the property insured. The defendants do not pretend that they were ignorant of the nature of the trade, or of the manner in which it was carried on. They knew that the license was in blank, and that it was left so for the purpose of filling it up at the port where the vessel should load, according to the terms contained in the paper. The only use or advantage, which the parties could have supposed would be made of it in blank, on the passage from Boston to Alexandria, was, that the enemy might suffer the ship to pass, under a belief that she would be employed in the licensed trade to the Peninsula. It is a valued policy. The defendants undertook to indemnify the plaintiff, if the license should be destroyed or rendered useless, not only by capture by the British or Americans, but “ by the ordinary perils of the seas, fire, or otherwise.” On her passage to Alexandria, the ship was taken by the enemy, who indorsed the license, and thereby made it applicable to that ship alone.
But it is insisted that the license was not lost by capture ; for that the paper was not taken by the enemy and appropriated to their use, but was suffered to remain a complete protection for the ship.
It is true, indeed, that the enemy so far respected the license in blank, as not to make prize of the ship. But, while she was in their possession, they rendered the license entirely useless for any other vessel. This, we think, was precisely such a risk as the parties contemplated at the time the policy was effected.
Indeed, the principles of blockade do not apply between enemies. But, if this had been a neutral ship, and bound to a port blockaded by the enemy, we do not think the loss * could [*220] be ascribed to the violation of the blockade. The ship had no knowledge of the blockade. She could not be considered as violating it, until after she had been warned not to enter. The enemy had no right to destroy the ship or goods under pretence of *194 exercising a belligerent right. Suppose the enc nay had burned the paper, would such loss be attributed to the blockade ?
There was, in the case at bar, no necessity for indorsing the notice on this license. It might, with as much or more propriety, have been entered on the register of the ship. In that event there would have been no loss ; for the license would have been carried in the ship to Philadelphia, and transmitted to the plaintiff unblemished. We are all of opinion that the verdict ought to stand.

Judgment according to the verdict.

 Col. Ins. Co. vs. Linch, 11 Johns. 233. — Peters vs. Delaware Ins. Co., 5 Serg. & Rawle, 473. — Warden vs. Horton, 4 Binney, 539.

 1 Burr. 49.

 Quære, if the subject of the insurance was legal ? Patton vs Nicholson, 3 Wheat, 204 — The Hiram, Wheat. 440. — 8 Crunch, 444. — The Aurora, 8 Cranch, 203. — The Julia, 8 Cranch, 181. — 1 Gallis. 594. — Craig vs U. S. Ins. Co., Peters C. C. R. 410. — The Aurora, 4 Hall, Am Law Journ. 473.— The Ariadne, 2 Wheat. 143. — The Langdon Cheves, 4 Wheat. 103. — Ogden vs. Barker, 18 Johns. 87.— Colquhoun vs. N. Y. Fire Ins Co, 15 Johns. 352. — Sed vide Hayward vs. Blake, ante, 176. — Bulklev vs. Derby Fishing Co, 1 Con. Rep. 571.